IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE: | CASE NO. 15-06593 (ESL)

MARIA SOCORRO RODRIGUEZ PEREZ | CHAPTER 13

Debtor

OPINION AND ORDER

This case is before the court upon the Chapter 13 Trustee's (hereinafter referred to as "Trustee") challenge to the "Validity of Contract for Bankruptcy Assistance and Amended Contract" pursuant to 11 U.S.C. §§526-528. The Trustee argues that the contract for bankruptcy assistance executed between the Debtor and her attorney is void for failure to comply with the material requirements of 11 U.S.C. §§526-528. The Trustee challenges the validity of the contract due to the following: (i) the contract does not clearly and conspicuously explain the services that the attorney will provide to the debtor; (ii) the contract does not clearly and conspicuously explain the fees or charges for the services to be provided by the attorney; (iii) the contract is open-ended and does not provide a cap on the cost of the services. The Trustee also challenges the validity of the amended contract for bankruptcy assistance executed five (5) months after the date of the filing of the bankruptcy petition due to the following: (i) the amended contract does not comply with the temporal requirements of 11 U.S.C. §528(a), and 527(b); (ii) Model Rule of Professional Conduct 1.5(b) requires the scope of the representation of the client and the basis or rate of the fee to be charged to the client be communicated in writing before commencing the representation; (iii) the amendment to the contract is invalid under Puerto Rico contract law because the original contract is void "ab initio."

Debtor's legal representation, attorneys Enrique M. Almeida Bernal and Zelma Dávila Carrasquillo of the law firm Almeida & Dávila, P.S.C. (hereinafter collectively referred to as

"Almeida") filed a reply arguing that the party alleging the invalidity of the contract has the burden to establish: (i) the alleged violation to sections 526, 527, and 528; (ii) that the Debt Relief Agency intentionally or negligently failed to comply with such provisions; (iii) actual damages; and (iv) that the assisted person does not wish to enforce the contract. Almeida also alleges that the Trustee lacks standing to question the validity of the services contract; that Almeida complied with the notices required under 11 U.S.C. §527 as they are included in the "Notice of Consumer Debtor(s) Under §342(b) of the Bankruptcy Code" filed with the bankruptcy petition, that the services contract includes a list of Debtor's responsibilities summarizing "some" of the disclosures included in §527; and that the professional services contract explains clearly and conspicuously the services to be provided by Debtor's counsel, the fees or charges for such services, and the terms of payment. Moreover, Almeida contends that the professional services contract was amended for the benefit of the Debtor and the estate, with Debtor's consent, and solely to speed the confirmation of the plan; that the Debtor wishes to enforce the contract signed with her attorney including the terms of payments; and that the remedies requested by the Trustee are unwarranted and arbitrary.

The Trustee filed a sur-reply arguing as follows: (i) the Chapter 13 Trustee has standing to bring forth a violation to 11 U.S.C. §§526-528; (ii) the original contract is void because it was executed four (4) weeks after the attorney provided the initial consultation to the Debtor; (iii) the cost of the services is not explained in the original contract; (iv) stating in the contract that services will be charged by the hour at a rate of $200.00 is not the same as informing the cost of the services; (v) the original contract does not explain the cost of the services; (vi) Almeida failed to comply with the notices required under 11 U.S.C. §527; (vii) the legal consequences of Debtor's wish to enforce the contract is that the attorney will have to provide the services even if

the attorney is not entitled to receive compensation for failure to comply with his responsibilities as a Debt Relief Agency.

For the reasons set forth below, the court finds and concludes that the original contract and amended contract executed with the Debtor are void for failure to comply with the material requirements of 11 U.S.C. §§526-528.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A). Venue is proper under 28 U.S.C. §§1408 and 1409.

Findings of Facts

1. On July 15, 2015, Almeida provided the initial attorney consultation to the Debtor.

2. On August 12, 2015, Almeida executed a written contract for bankruptcy assistance with the Debtor (hereinafter referred to as "original contract").

3. The original contract provides in clause no. 2 that the base[1] fee for the filing of the bankruptcy case under chapter 13 is $3,000.00, "as it has been pre-approved by the Bankruptcy Court," of which the Debtor shall pay $200.00 before the filing of the bankruptcy, and the outstanding balance shall be paid through the plan. Clause no. 2 further provides as follows:

> "COUNSEL shall maintain records on the time devoted to the services rendered to CLIENT and shall request the Court the approval of additional attorneys' fees, when the time devoted and/or accrued expenses would exceed the base fee, in accordance to the regular hourly rates, as stated in clause 2 of this contract.

---

[1] The court construes "base fee" to mean the flat fee allowed under PR LBR 2016-1(f)(1).

-3-

CLIENT ACKNOWLEDGES THAT COUNSEL'S WORK AND THAT OF ITS PARALEGALS, ACCOUNTANTS OR ASSOCIATES BEFORE THE CONFIRMATION OF HIS/HER CASE MAY RESULT IN FEES IN ADDITION TO THE $3,000 PRE-APPROVED BY THE COURT, AND THAT THE WORK AFTER THE CONFIRMATION OF THE CASE WILL ALWAYS RESULT IN A REQUEST BY COUNSEL FOR ADDITIONAL FEES."

4.      The original contract does not explain with particularity the services that Almeida will provide to the Debtor.

5.      On August 28, 2015, the Debtor filed a voluntary petition in the Bankruptcy Court for the District of Puerto Rico under the provisions of chapter 13 of the Bankruptcy Code.

6.      The Debtor is an assisted person as defined in 11 U.S.C.§101(3).  The assets of the debtor, including exempt property are valued at $172,493.66.

7.      The Debtor is represented in this case by Enrique M. Almeida Bernal, and Zelma Davila Carrasquillo, of the law firm Almeida & Davila, PSC.

8.      Almeida is a "debt relief agency as defined by 11 U.S.C. §101(12A). Almeida provides bankruptcy assistance to the Debtor in return for the payment of money.

9.      The Disclosure of Compensation of Attorney for Debtor filed on the petition date pursuant to 11 U. S.C. § 329(a) and Bankruptcy Rule 2016(b), in relevant parts, provides as follows:

"1.  Pursuant to 11 U.S.C. §329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid by me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

For legal services, I have agreed to accept…………...………$3,000.00

Prior to the filing of this statement I have received …….….…$200.00

Balance Due                                                              $2,800.00
…
…

-4-

6.  In return for the above-disclosed fee, I have agreed to render legal services for all aspects of the bankruptcy case, including:

a.      Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

b.      Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

c.      Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearing thereof;

d.      [Other provisions as needed]
**The above stated agreed fee is subject to hourly billing if fees exceed $3,000.00. **

Pursuant to the professional services agreement the client agrees to compensate Almeida & Davila, PSC, in such amount as is approved by the Bankruptcy Court in accordance with the terms and conditions of the Chapter 13 Plan. The estimated fee for services in connection with a confirmed chapter 13 Plan shall be $3,000.00, based upon the hourly rate of services performed by the Firm, and as allowed by LBR 2016-1(f)(1).

The actual fee shall be that which is approved by the court. If the time devoted to such tasks exceeds $3,000.00, then, the fees, costs and expenses shall be such amount stated in detailed application(s) for compensation filed with the court. The application(s) for compensation shall be based upon the hourly charges for the services performed, and the actual cost of expenses, subject to the approval by the Court.

The fee agreement between Almeida & Davila, PSC and the debtor(s) provides the amount of $3,000.00 will be accepted for services rendered up to the confirmation of the plan or until the $3,000.00 is accumulated in services provided at the regular hourly rates of $200.00 for services performed by Enrique M. Almeida and Zelma Dávila Carrasquillo. Matters attended by paralegal staff will be charged at the rate of $85.00 per hour, and services of in-house accountants will be charged at the rate of $100.00 per hour. Services of associate attorneys will be charged at the rate of $175.00 per hour. Expenses will be charged at the price/cost. Any work in excess of the $3,000 will be billed through an application for compensation to be filed with the Court for its approval. This disclosure should be construed in harmony with 11 USC sec. 330(a)(4)(B), rules, and all applicable orders.

…"

10. The Debtor filed a chapter 13 plan dated August 27, 2015 and two (2) subsequent amended plans dated November 3, 2015, and December 10, 2015, all of which include the same provision regarding the payment of attorney's fees. The plans provide, in section II(A)(2), as follows:

"Debtor's attorney fees- Upon confirmation of the plan, the trustee will pay the attorney fees before any other creditor, without prejudice to payment of Trustee's statutory fees as required by law.

Pursuant to the professional services agreement the client agrees to compensate Almeida & Davila, PSC, in such amount as is approved by the Bankruptcy Court in accordance with the terms and conditions of the Chapter 13 Plan. The estimated fee for services in connection with a confirmed chapter 13 Plan shall be $3,000.00, based upon the hourly rate of the services performed by the Firm, and as allowed by LBR 2016-1(f)(1).

The actual fee shall be that which is approved by the court. If the time devoted to such tasks exceeds $3,000.00 then, the fees, costs and expenses shall be such amount stated in detailed application(s) for compensation filed with the court. The application(s) for compensation shall be based upon the hourly charges for the services performed, and the actual cost of expenses, subject to the approval by the Court.

Before the filing of the Petition in this case, **the Debtor pre-paid $200.00 of Debtor's attorney's fees.**"

11. On January 27, 2016, the Chapter 13 Trustee filed a Report on Confirmation in which he objected the confirmation of the plan dated December 10, 2015, on the following ground:

"It is the Trustee's position that Plan provision for payment of attorney's fees does not comply with the regulatory regime of P. R. LBR 2016-1(f), which allows for a flat fee not to exceed $3,000.00. Said provision states counsel for debtor will receive the $3,000.00 flat fee allowed under P. R. LBR 2016-1(f)(1) for services performed until the confirmation of the plan, and at the same time provides that counsel for debtor will file an application for compensation if the time devoted to obtaining the confirmation of the plan exceeds $3,000.00, based upon an hourly rate. Counsel for debtor cannot claim an estimated fee of $3,000.00 for legal fees akin to the flat fee. A flat fee does not vary with change in conditions or in particular cases. If changes in conditions, such as amount of time spent on a case to obtain the confirmation of the plan, affect the amount of compensation, then by definition is not a flat fee. P.R. LBR 2016-1(f) does not allow a blend between the

-6-

flat fee and an hourly rate. When services are provided on an hourly basis, the minimum charge counsel could make is determined on the number of compensation hours spent in the representation of the debtor. If the hours spent in the representation do not reach $3,000.00 worth of services computed on an hourly basis, then counsel is not entitled to receive a minimum fee of $3,000.00, only the actual fee earned. Moreover, the proposition that an attorney for a Chapter 13 consumer debtor can secure an estimated fee of $3,000.00, as if it were a flat fee, and simultaneously charge additional fees to the debtor on an hourly rate basis beyond $3,000.00 runs afoul with §528 (a). This type of billing scheme makes it impossible for a typical consumer debtor to be meaningfully informed and to understand what is the ultimate cost of the legal services in connection with his/her bankruptcy case, such as the debtor in this case. Section §528(a), which the Supreme Court has interpreted as embodying standards of professional conduct, Milavetz v. U.S., 559 U.S. 229 (2010), requires a debt relief agency to clearly and conspicuously explain to the debtor the services to be provided, the fees or charges for such services, and the terms of payment. The 2016 disclosure statement (docket #1, p. 35) and the plan provision regarding attorney's fees on their face do not comply with §528(a) because the billing scheme used does not inform to the debtor the ultimate fee or charge for legal services. See In re Lugo Parrilla, 14 -01951 ESL, Doc. #79.[2] "The attorney is the one who is knowledgeable about legal fees and the services likely to be required; the client typically is not. 'Plain English' contracts may not be easy to draft, but Congress obviously expected attorneys representing consumer debtors in bankruptcy to provide as much clarity as possible. §528 (a)(1), Bankruptcy Code." In re Robinson, 368 B.R. 492, 501-02, (Bankr. E.D. Va. 2007)."

12.     On February 2, 2016, one (1) day before the contested hearing on confirmation of the chapter 13 plan was held, Almeida executed an amended contract with the Debtor to replace the provisions of the original contract with new provisions defining the scope of the representation and the fee for the services.

13.     The amended contract provides that the cost of the services, until the confirmation of the plan, is the $3,000.00 flat fee allowed under Local Bankruptcy Rule 2016, and services provided after the confirmation of the plan will be charged on an hourly basis at a rate of $200.00 per hour.

---

[2] In re Lugo Parrilla, 530 B.R. 1 (Bankr. D.P.R. 2015).  See also In re Medina-Espinosa 2015 WL 2400092 Bankr. D.P.R. May 18, 2015.

14. The amended contract provides two (2) lists of services to be provided by the attorney: (i) the first list enumerates the services to be provided before the filing of the case; (ii) the second list enumerated the services to be provided after the filing of the case.

15. The amended contract includes two (2) written notices, one identified as notice under §§342(b) and 527(a), and the second identified as notice under §527(b). The written notices are signed by the Debtor and dated February 2, 2016.

Applicable Law and Analysis

The court will engage in a three-step analysis to discuss the applicable statutory requirements and definitions in the Bankruptcy Code[3], and conclude that the services contract, as well as the amended services contract are void. The court will first address that Almeida, as a debt relief agency provided bankruptcy assistance to an assisted person, the Debtor; second, determine that the chapter 13 trustee has standing to challenge the services contracts; and, third, by analyzing the services contracts' breach with the requirements set forth in §§526-528, conclude that the services contracts are void.

### I. Definition of Debt Relief Agency

The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") is a major reform enacted by the United States Congress to correct perceived abuses of the bankruptcy system. Among the reform measures are several provisions that regulate the conduct of "debt relief agenc[ies]," that is, professionals who provide bankruptcy assistance to consumer debtors. Milavetz, Gallop & Milavetz, P.A. v. U.S., 559 U.S. 229, 231–32 (2010).

Under BAPCPA a debt relief agency is defined as follows:

---

[3] The term, "Bankruptcy Code," refers to title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended; unless otherwise indicated. All references to Bankruptcy Rule are to the Federal Rules of Bankruptcy Procedure.

-8-

"The term "debt relief agency" means any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110, but does not include--
(A) any person who is an officer, director, employee, or agent of a person who provides such assistance or of the bankruptcy petition preparer;
(B) a nonprofit organization that is exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986;
(C) a creditor of such assisted person, to the extent that the creditor is assisting such assisted person to restructure any debt owed by such assisted person to the creditor;
(D) a depository institution (as defined in section 3 of the Federal Deposit Insurance Act) or any Federal credit union or State credit union (as those terms are defined in section 101 of the Federal Credit Union Act), or any affiliate or subsidiary of such depository institution or credit union; or
(E) an author, publisher, distributor, or seller of works subject to copyright protection under title 17, when acting in such capacity." 11 U.S.C. §101(12A).

The court finds that Almeida is a debt relief agency as defined in the Bankruptcy Code.

## II. *Definition of Assisted Person*

With the enactment of BAPCPA, Congress created a protected class known as "assisted person". The term 'assisted person' means any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $192,450[4]." 11 U.S.C. §101(3). As stated in the above finding of fact number six (6), the Debtor meets the definition of an "assisted person."

## III. *Definition of Bankruptcy Assistance*

The term "bankruptcy assistance" is defined as follows:

"The term "bankruptcy assistance" means any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title." 11 U.S.C. §101(4A).

---

[4] At the time of the filing of the petition the amount was $186,825.

-9-

To protect assisted persons from abusive practices, BAPCPA introduced strict measures on the conduct of consumer debtors' attorneys, as debt relief agencies. "The bankruptcy attorney as a debt relief agency must provide the client, as an assisted person, with all the protection and rights set forth in 11 U.S.C.A. §§526 to 528." In re Pereira-Santiago, 457 B.R. 172, 175 (Bankr. D. PR. 2011).

### IV. Debt Relief Agencies: Requirements, Disclosures and Restrictions

In enacting the BAPCPA, Congress responded to evidence that attorneys and other bankruptcy professionals often played a role in abusing the bankruptcy system. Hersh v. United States, 553 F.3d 743, 748 (5th Cir. 2008). During the congressional hearings, judges, scholars, and debtors provided evidence of sufficiently widespread confusion and deception in the operation of the bankruptcy system that undermined its fairness and efficacy, and derived largely from consumer debtor's inadequate access to information. Conn. Bar Ass'n v. United States, 620 F. 3d 81, 97 (2nd Cir. 2010).

The purpose of incorporating the provisions in 11 U.S.C. §§526-528 was to require debt relief agencies to disclose specific information about the bankruptcy process to consumer debtors, whose frequent ignorance and confusion could subject them to easy deception. *Id*. at 95. Sections 526-528 govern the relationship between "debt relief agencies" and "assisted persons", by regulating the manner in which bankruptcy attorneys provide services to their clients. Hersh, 553 F.3d at 747.

Sections 526-528 are classified as follows: Restrictions (11 U.S.C. §526), Disclosures (11 U.S.C. §527) and Requirements (11 U.S.C. §528). Section 526 contains the provisions to enforce Sections 526-528. The Court will follow a chronological approach, to discuss the legal obligations imposed to debt relief agencies.

-10-

A.  *11 U.S.C. §527: Disclosures*

A debt relief agency is required to provide certain disclosures, clearly and conspicuously and not later than three (3) business days after the first date in which the debt relief agency first offers to provide any bankruptcy assistance services to an assisted person, including:

(i) the written notice required under §342(b), which must contain a brief description of chapters 7, 11, 12, and 13 and the general purposes, benefits, and costs of proceeding under each of those chapters, the types of services available from credit counseling agencies, and statements specifying that a person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury in connection with a bankruptcy case shall be subject to fine, imprisonment, or both, and that all information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General; 11 U.S.C. §§527(a)(1) and (342)(b);

(ii) a clear and conspicuous written notice advising the assisted person of the requirement under the Bankruptcy Code to provide complete, accurate, and truthful information, and that failure to provide information may result in dismissal of the case, or other sanction including criminal sanction; 11 U.S.C. §527(a)(2);

(iii) a written notice in a single document separate from other documents or notices provided to the assisted person that contains the language prescribed in §527(b) or substantially similar; 11 U.S.C. §527(b)[5];

---

[5] The written notice required under 11 U.S.C. §527(b) must include, among others, the following statement: "If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney. THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone." 11 U.S.C.A. § 527.

-11-

(iv) a written notice to the assisted person on how to provide all the information that a debtor is required to provide under section 521 11 U.S.C. §527(c)[6].

The debt relief agency is required to maintain a copy of the notices under section 527(a) for a period of two (2) years after the date on which the notice is given to the assisted person. 11 U.S.C.§527(d).

### B. 11 U.S.C. §528: Requirements

A debt relief agency must execute a written contract with the assisted person, not later than five (5) business days after the date on which it first provided bankruptcy assistance to the assisted person, that clearly and conspicuously explains the services that the debt relief agency will provide to the assisted person, the fees or charges for such services, and the terms of payment. 11 U.S.C. §528(a).[7] A fully executed and completed contract must be signed by all the parties. In Re Seare, 493 B.R. 158 (Bank. D. Nevada 2013) aff'd, 515 B.R. 599 (B.A.P. 9th Cir. 2014). The debt relief agency must provide the assisted person with a copy of the fully executed and completed contract. 11 U.S.C. §528(a)(2).

Advertisement of bankruptcy assistance to the public is also regulated as debt relief agencies must disclose certain information in their advertisement. 11 U.S.C. §528(a)(3) and (4), and §528(b).

---

[6] §527(c) provides an exception to the "how to" notices required by §527(c)(1), (c)(2), and (c)(3). The section clarifies that the notices shall be given, except to the extent the debt relief agency provides the required information itself, after reasonably diligent inquiry of the assisted person or others to obtain such information reasonably accurately for inclusion on the petition, schedules or statement of financial affairs. Hence, an "...attorney is directed either to obtain the debtor's required information or supply the debtor with sufficient directions on how to acquire all of the information that a debtor is required to provide". In Re Dobbs, 535 B.R. 675, 684 (Bank. N.D. Miss. 2015).

[7] However, "...every encounter by a law firm with a prospective client does not amount to providing legal services, and clients certainly can shop around before making a hiring decision. To suggest that the five-day window is opened whenever a client talks to a law firm would distort the meaning of section 528(a) and serve no useful purpose." In Re Humphries, 453 B.R. 261, 267 (E.D. Mich. 2011).

-12-

C. *11 U.S.C. §526: Restrictions*

Attorneys, as debt relief agencies, are prohibited from:

(i) failing to perform any services that the debt relief agency informed the prospective assisted person it would provide in connection with a bankruptcy case; 11 U.S.C. §526(a)(1);

(ii) making any statement that is untrue or misleading, or advising an assisted person to make a statement in a document filed in a case or proceeding that is untrue or misleading, or that upon the exercise of reasonable care should be known by the debt relief agency to be untrue or misleading; 11 U.S.C. §526(a)(2);

(iii) misrepresenting to an assisted person the services that the attorney will provide, or the benefits and risks that may result if such person becomes a debtor in a bankruptcy case; 11 U.S.C. §526(a)(3);

(iv) advising an assisted person to incur in more debt in contemplation of filing a bankruptcy case or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a bankruptcy case; 11 U.S.C. §526(a)(4)[8].

Any waiver by an assisted person of any of the protections or rights provided under §526 is unenforceable against the debtor but may be enforced against the debt relief agency. 11 U.S.C. §526(b). Furthermore, Section 526 provides the liability to which a debt relief agency may be exposed and the enforcement mechanism to compel adherence to the law. 11 U.S.C. §526(c) and (d). Section 526(c)(1) states that any contract between a debt relief agency and an assisted person that does not comply with the material requirements of §§526-528 shall be void and may not be

---

[8] The Supreme Court has interpreted Section 526(a)(4) as prohibiting a debt relief agency from advising a debtor to incur in more debt because the debtor is filing for bankruptcy, rather than for a valid purpose. Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 230 (2010).

-13-

enforced by any Federal or State court or by any other person, other than such assisted person. Furthermore, §526(c)(2) makes an attorney who acted intentionally or negligently liable for fees already received, actual damages, and attorneys' fees.

In view of the above, the court finds and concludes that Almeida is a debt relief agency providing bankruptcy assistance to the Debtor, who is an assisted person, and must have complied with the disclosures and requirements of 11 U.S.C. §§527 and 528. Additionally, Almeida is subject to the restrictions and liabilities imposed by 11 U.S.C. § 526.

*V. Standing of the Chapter 13 Trustee to challenge the validity of the contract*

Almeida argues that the Chapter 13 Trustee lacks standing to question the validity of the professional services contract between the Debtor and the law firm because the Trustee does not meet the components of the standing requirement, that is, injury in fact, a causal connection between the injury and the conduct complained and the likelihood that the injury will be redressed by a favorable decision.

This Court has previously ruled that the Chapter 13 Trustee has standing to question the validity of the services contract pursuant to 11 U.S.C. §§323 and 1302. (See In re Gonzalez Torres, et al, 14-09581 ESL, Docket No. 150, wherein the chapter 13 trustee also challenged the Almeida services contract). A Chapter 13 Trustee has an independent duty to review documents pertaining to the compensation of debtors' attorneys or bankruptcy petition preparers. This review is necessary as part of investigating the debtor's financial affairs and claims against the estate. 11 U.S.C. §1302(b)(1) incorporating 11 U.S.C. §704(a)(4). (Handbook for Chapter 13 Standing Trustees, U.S. Department of Justice-Executive Office for the United States Trustees, October 2012). Debtor's transaction with her attorney falls within the purview of investigating the financial affairs of the debtor.

The applicable statutory provisions on debt relief agencies provide additional tools to monitor the compensation of attorneys representing assisted persons in bankruptcy proceedings. Section 528 requires an attorney representing an assisted person to execute a written agreement, prior to the filing of the bankruptcy petition, that clearly and conspicuously explains the services to be provided to the assisted person, and the cost of such services. Section 527(a)(2) requires that the debt relief agency must advise the assisted person that the information provided during a case must be complete, accurate and truthful; that current monthly income and disposable income are required to be stated after reasonable inquiry; and that the information provided may be audited. Section 1302(b) provides and mandates that a chapter 13 trustee shall appear and be heard at any hearing concerning confirmation of a plan. The interaction of §527(a)(2) and §1302(b) give the trustee standing to challenge a services contract.

Furthermore, to confirm a plan, the court must examine if the debtor is able to make all payments and comply with the proposed plan. 11 U.S.C. 1325(a)(6). The disclosures required by §§527(a)(2) are directly related to the ability of an assisted person to comply with the confirmation requirements of section 1325. The court must further evaluate if a plan is proposed in good faith and not by any means forbidden by law. 11 U.S.C. §1325(a)(3). The Court is prohibited by §526(c)(1) to enforce a contract that does not comply with the material requirements of §§526-528. As a party required to appear and be heard during any hearing that concerns confirmation of a plan, the Trustee has standing to object a plan that fails to meet all the requirements for confirmation, including the disbursement of attorney's fees based on a service contract that may be deem void pursuant to §526(c)(1).

Considering the legal regime created by BAPCPA, a critical factor on matters affecting confirmation and for the allowance of attorney's fees is the existence of a written contract between the debt relief agency and the assisted person. If a written contract was not executed or

-15-

if the same is void for failure to comply with the material requirements of §§526-528, the debt relief agency is not entitled to receive compensation and estate funds cannot be used for such purpose.

The court in In re Norman, 2006 WL 3053309 (Bankr, E.D. VA 2006) held that as part of the new requirements of BAPCPA the debtor was required to provide the Trustee copy of an engagement letter. The Norman court held as follows:

> "… In order to investigate the debtor's finances, the trustee must have access to the documents that either verify or refute the numbers the debtor is required to provide to the Court in the bankruptcy filing, including disclosure of attorney compensation. While the Court agrees with the debtor that a by-product of turning over the letters to the trustee is determining debtor's counsel compliance, it also allows the trustee to ensure that the debtor is not using funds to pay his attorney that would ordinarily come into the estate and be used to pay creditors. The Court finds that reviewing the letters fall within the purview of investigating the debtor's finances." In re Norman, No. 06-70859-A, 2006 LEXIS 2925 AT *20, 2006 WL 3053309 at *6 (Bankr. E.D. Va. Oct. 24, 2006).

Moreover, the Bankruptcy Code and Rules have several provisions tailored for the monitoring and supervision of the compensation paid or agreed to be paid to debtor's attorneys. See 11 U.S.C. §110(h)(2) (Bankruptcy Petition Preparer duty to disclose); 11 U.S.C. §329(a) (Attorney duty to disclose); 11 U.S.C. §330 (Compensation of debtor's attorney); Fed R. Bankr. P. 2016(b) (Duty to disclose compensation paid or agreed to be paid); 11 U.S.C. §504 (Sharing of compensation); Fed. R. Bankr. P. 2017 (Examining Debtor-Attorney transactions). These provisions were in existence before the enactment of BAPCPA.

Consequently, the Court reiterates its previous holding that the Chapter 13 Trustee has standing to challenge the validity of the contract for bankruptcy assistance.

VI. *Original Contract: Compliance with 11 U.S.C. §§527 and 528*

This Court has held "that retainer agreements in bankruptcy must comply with section 528, are held to a higher standard than conventional contracts, and are subject to applicable

-16-

codes of professional responsibility." In re Pereira Santiago, 457 B.R. 172, 176 (Bankr. D.P.R. 2011).

The high standard of §528(a) has been interpreted as encompassing the duty to explain with clarity in the written contract the services to be provided and the fees or charges for such services. In the case In re Robinson, 368 B.R. 492 (Bankr. E.D. VA 2007), the bankruptcy court held as follows:

> "In this case, the law firm provided the debtor a written contract at the time of the first office conference. However, the agreement, although comprehensive and detailed, could hardly be characterized as clear. In terms of formatting, it consists of a single, visually-dense, small-type, 902–word paragraph covering a number of issues which are not addressed in any organized or logical manner. It is true that a careful reader, upon reading the entire document, would probably come to understand that the $3,000 fee so prominently set forth at the top of the document is effectively a minimum fee for the case. But it is doubtful that a consumer debtor who has never been through the bankruptcy process and is not a sophisticated purchaser of legal services would have any real understanding, even after reading the contract, just how much actually is covered by the retainer. Put another way, since a consumer debtor does not know what services are likely to be needed, such a consumer would have no way of knowing whether the stated exclusions are likely to apply, and what the chances are of receiving a bill that (as here) vastly exceeds the retainer.
>
> …
>
> …
>
> Clearly, competing interests are at stake. Good attorneys should be fairly compensated for work that benefits the client—otherwise they will not remain in business for long. At the same time, clients are entitled to a clear statement of the fee arrangement and the services to be provided. The attorney is the one who is knowledgeable about legal fees and the services likely to be required; the client typically is not. "Plain English" contracts may not be easy to draft, but Congress obviously expected attorneys representing consumer debtors in bankruptcy to provide as much clarity as possible. § 528(a)(1), Bankruptcy Code…." In re Robinson, 368 B.R. 492, 501-502, (Bankr. E.D. Va. 2007).

A key component of Section 528 is that the written contract "explains clearly and conspicuously" the services to be rendered, the fees and terms of payments. In the case In re Lugo Parrilla, this Court stated its concern regarding the fee agreement disclosed by debtor's attorney as follows:

-17-

"The court does note that the disclosures in the form identified as "Disclosure of Compensation of Attorney for Debtor(s)" does not clearly establish if the ultimate fee to be charged is the flat fee of $3,000 or a higher fee under the lodestar method. Thus, the "2016 Statement" in this case would not by itself, meet the requirements of 11 U.S.C.§528(a)." In Re Lugo Parrilla, 530 B.R. at 14

The requirement of §528(a)(1)(B) must be analyzed together with the written notice required under §527(b), which requires that a debt relief agency must provide to an assisted person a written notice that, in part, informs as follows: "THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone." The protections imbedded in §§527(b) and 528(a)(1)(B) create a right for the assisted persons to be informed in a written contract of how much the services of the debt relief agency will cost.

The provisions in P.R. L.B.R. 2016-1(f) are consonant with Fed. R. Bankr. P. 1001, that is, "to secure the just speedy, and inexpensive determination of every case and proceeding." Bankruptcy courts agree on this conclusion as "a presumptively reasonable amount allowed for attorney fees in Chapter 13 cases without the need to file an application for compensation, promotes judicial efficiency and flexibility in handling the volume of chapter 13 cases managed by the courts, and aids courts in disposing of run-of-the-mill Chapter 13 fee applications expeditiously and uniformly." In re Becker, 469 B.R. 121 (Bankr. M.D. Fla. 2012). Through the local rule, the court adopted the practice of establishing a flat fee for providing a bundle of services that are generally required for the completion of consumer cases without requiring the filing of an itemized fee application for every chapter 13 case. In Re Lugo Parrilla, 530 B.R. at 7 However, as stated by this Court in In Re Lugo Parrilla, P.R. L.B.R. 2016-1(f)(1) does not discourage the request for fee awards for Chapter 13 cases which are more complex and require

-18-

greater time expenditure. Likewise, the local rule does not discourage the request for fee awards for Chapter 13 cases which are less than the flat fee for simple cases which require lesser expenditure.

Under particular circumstances not foreseeable at the time of filing the chapter 13 petition, attorneys may file an application for compensation for an amount exceeding the flat fee. However, the debtor must receive proper notice and agree to the same. In re Cahill, 478 B.R. 173 (Bankr. S.D. N.Y 2012). The flat fee is not intended to be a retainer followed by an application for compensation. In re Long, 553 B.R. 266 (Bankr. M.D. Pa. 2016).[9]

When a chapter 13 case envisions services beyond those required in a routine case, the exclusion of such particularly identified services may be excepted from the flat fee but must be included in the services contract and the 2016 disclosure statement. In re Snyder, 445 B.R. 431 (Bankr. E.D. Pa. 2010). Proper notice of the services excluded is required. In Re Smith 331 B.R. 622, 630 (Bank. M.D. Pa. 2005). When excluding services, an attorney must pay sufficient attention to the debtor's individual goals and needs. In Re Seare, 493 B.R at 181. A contract listing excluded services in technical terms, and that does not relate these services to a client's particular case, fails the "clear and conspicuous" requirement of a contract pursuant to section 528. In Re Seare, 493 B.R. at 216.

The contract for bankruptcy assistance executed between the Debtor and Almeida prior to the filing of the bankruptcy petition ("original contract") does not comply with the material requirements of §528(a). The contract has two mayor faults. First, the contract does not clearly and conspicuously explain the services to be provided. The contract contains several instructions

---

[9] The practice of adopting flat or no look fees in chapter 13 cases has been the subject of debate. An excellent exposition and discussion appears in the following law review article: "NO LOOK' ATTORNEYS' FEES AND THE ATTORNEYS WHO ARE LOOKING: AN EMPIRICAL ANALYSIS OF PRESUMPTIVELY APPROVED ATTORNEYS' FEES IN CHAPTER 13 BANKRUPTCIES AND A PROPOSAL FOR REFORM," Bruce M. Price, 20 Am. Bankr. Inst. L. Rev. 291, Spring, 2012.

as to what is required from the debtor and several other provisions related to attorney's compensation. However, the contract makes no reference to the specific services that will be performed by the debt relief agency, as required by 528(a)(1)(A). This is critical in a case intended to be charged by hourly rates, as the assisted person is unable to understand how much he or she will end up paying for attorney's fees and enters into a contractual relationship with no clear and conspicuous explanation as to the services required to the specific case and an estimated amount of what the services may cost. The Almeida contract rigorously lists the expected behavior of the assisted person. However, Almeida offers no clarification and/or explanation as to the professional services to be provided or the necessary services required to attain the assisted person's goals.

Secondly, Almeida fails to comply with §528(a)(1)(B), by not clearly and conspicuously explaining "the fees or charges for such services". The logical outcome of not clearly and conspicuously explaining the services to be provided is the debt relief agency's inability to clearly and conspicuously explain how much such services may cost. Although Almeida argues that the original contract was clear, establishing that the fees would be charged on an hourly basis, and that the $3,000.00 referenced in the contract was an estimate, the text of the contract does not describe the $3,000.00 as an estimate but as a base or minimum fee "pre-approved by the bankruptcy court". This language, on its own, fails the clear and conspicuous requirements of section 528(a)(1)(B). However, in the *Reply to Trustee's Memorandum* filed at Docket No. 107, Almeida, states that "…the contract contains **some** notices that informed the debtor of certain obligations required from her under the bankruptcy code. Such notices are **related** to the services described in P.R. LBR 2016-(1)(f)(2)(B), (C), (E), (F), (G), and (H)." *Our emphasis*. Further, Almeida states that "…a **thorough examination** of the contract reveals that the majority of such services are included". *Our emphasis*. Almeida's arguments support the Court's conclusion that

-20-

the contract fails to comply with 528(A)(1)(B). "Some" and "related" notices are insufficient to comply with the specific notices required at §527. In addition, the necessity of a "thorough examination" of the contract is incompatible with the clear and conspicuous language required by §528.

The practice of using the flat fee as a base or minimum fee or retainer has been rejected by other bankruptcy courts. "The flat fee is not intended to serve as a retainer against which an attorney charges time expended until the retainer is exhausted, followed by an application for compensation for any remaining unpaid services." In Re Smith, 331 B.R. at 630. The Almeida services contract in this case is in tune with the practice rejected by the court in In re Smith.

Clause no. 2 of the original contract begins by stating the hourly rate of attorneys Enrique Almeida and Zelma Dávila ($200.00), for associate attorneys ($175.00), for paralegals ($85.00), and for in-house accountants ($100). The following paragraph states that the base or minimum fee[10] for the filing of the bankruptcy case under chapter 13 is $3,000, "as it has been pre-approved by the Bankruptcy Court," of which the Debtor shall pay $200.00 before the filing of the bankruptcy, and the outstanding balance shall be paid through the plan. Yet in a different paragraph of the same clause no. 2 the contract states as follows:

> "COUNSEL shall maintain records on the time devoted to the services rendered to CLIENT and shall request the Court the approval of additional attorneys' fees, when the time devoted and/or accrued expenses would exceed the minimum fee, in accordance to the regular hourly rates, as stated in clause 2 of this contract.
>
> CLIENT ACKNOWLEDGES THAT COUNSEL'S WORK AND THAT OF ITS PARALEGALS, ACCOUNTANTS OR ASSOCIATES BEFORE THE CONFIRMATION OF HIS/HER CASE MAY RESULT IN FEES IN

---

[10] Almeida objects to the chapter 13 trustee's translation of the Spanish term "honorarios base" as "minimum fee." The Court finds that "minimum fee" or "base fee" is used in the contract to reference the $3,000.00 fee allowed under PR LBR 2016-1(f)(1) for chapter 13 cases. The original contract also states that the services provided by the attorneys may result in additional fees to the $3,000.00 pre-approved by the Court. In this context, the $3,000.00 fee mentioned in the contract operates as a starting point to which attorney's fees may be added.

-21-

ADDITION TO THE 3,000 PRE-APPROVED BY THE COURT, AND THAT THE WORK AFTER THE CONFIRMATION OF THE CASE WILL ALWAYS RESULT IN A REQUEST BY COUNSEL FOR ADDITIONAL FEES." (Docket no. 96, Exhibit A-2, Clause #2).

The clause regarding attorney's fees does not inform the Debtor whether the cost of the services will be the $3,000.00 flat fee allowed under PR LBR 2016-1(f)(1) or a higher fee charged under the lodestar method. The clause was drafted in a fashion that would allow the attorney to use the $3,000.00 flat fee authorized in this jurisdiction under P.R. LBR 2016-1(f) as a minimum fee or retainer against which the attorney could charge against until the $3,000 are exhausted. PR LBR 2016-1(f)(1) provides that "[t]he court may approve attorneys' fees in chapter 13 cases at the confirmation hearing without the debtor's attorney filing a detailed application if the fees, costs and expenses (excluding the filing fee) do not exceed $3,000.00." In addition, PR LBR 2016-1(f)(2) provides that "[w]hen allowing the flat fee, in addition to the requirements of 11 U.S.C. §§ 526 and 527, counsel for the chapter 13 debtor should discharge the following responsibilities. . ." The flat fee represents an agreement not only with the debtor, but also with the court, in which the attorney commits to perform the required services and, therefore, is dispensed from the filing of an application for compensation. In re Brent, 458 B.R. 444 (Bankr. N.D. Ill. 2011). The contract clause misleads the Debtor when in states that the Court has pre-approved $3,000.00.

Considering the provisions of PR LBR 2016-1(f) (1,2), a services contract for an assisted person in a chapter 13 case shall provide for either a flat fee or an application for compensation under the loadstar method. This choice must also be consistent with and reflected in the Bankruptcy Rule 2016 statement "Disclosure of Compensation of Attorney for Debtor(s)." A services contract may not allow for both, at the sole discretion of debtor(s)'counsel, for the

-22-

benefit of the debt relief agent, and in detriment of the amounts to be paid to general unsecured creditors.

Almeida argues that the contract explains the cost of the services because the Debtor understood the services would be charged by the hour. In so doing, Almeida is applying a subjective standard. A subjective standard is defined as a legal standard peculiar to "a particular person and based on the person's individual views and experiences." Black's Law Dictionary (10th ed. 2014). Such a subjective standard does not clearly inform the assisted person what is the real estimated cost of services to be provided.

Compliance with the law must be evaluated under an objective standard. The term objective standard is defined as "a legal standard based on conduct and perceptions external to a particular person." Black's Law Dictionary (10th ed. 2014).[11] The Court rejects the use of a subjective standard to evaluate compliance with the statute since §528(a) establishes specific requirements that must be contained in the written contract and a period to execute said document. Compliance with the law on services contracts by a debt relief agent to an assisted person is centered on whether the text of the contract complies with the material requirements of

---

[11] An objective standard has been adopted in determining whether claims in an involuntary petition are subject to a *bona fide* dispute. In Re Dilley, 339 B.R. 1 (BAP 1st Cir. 2006); In Re Reyes Colón, 474 B.R. 330 (Bankr. D.P.R. 2012). Bankruptcy Rule 9011 demands that counsel's actions comport with an objective standard of lawyerly performance. In Re D.C. Sullivan Co., 843 F. 2d 596 (1st Cir. 1988); In Re Kusek, 461 B.R. 691 (BAP 1st Cir. 2011); In Re MJS Las Croabas Props., 530 B.R. 25 ( Bankr. D.P.R. 2015), *aff'd* by Castellanos Grp. Law Firm, L.L.C. v. FDIC (MJS Las Croabas Props.), 545 B.R. 401 (B.A.P. 1st Cir. 2016), In Re Alonso, 546 B.R. 1 (Bankr. D.P.R. 2016). "'Intent is irrelevant" because "the [Rule 9011] standard to be applied is an objective one." Accuracy of representations is an objective matter, as is the reasonableness of any inquiry actually made." In Re Nosek, 609 F.3d 6 (1st Cir. 2010). The appropriate standard for measuring whether a party and his or her attorney has responsibly initiated and/or litigated a cause of action in compliance with Rule 11, as amended in 1983, is an objective standard of reasonableness under the circumstances. Cruz v. Savage, 896 F.2d 626 (1st Cir. 1990), Muthig v. Brant Point Nantucket, Inc., 838 F. 2d 600. (1st Cir. 1988) For purposes of 11 U.S.C.S. § 524(a), the United States Court of Appeals for the First Circuit assesses whether conduct is improperly coercive or harassing under an objective standard; the debtor's subjective feeling of coercion or harassment is not enough. Bates v. CitiMortgage, Inc., 844 F.3d 300 (1st Cir. 2016); Pratt v. GMAC (In Re Pratt) 462 F.3d 14 (1st Cir. 2006); Navarro v. Banco Popular de Puerto Rico (In Re Navarro), 563 B.R. 127 (Bankr. D.P.R. 2017).

-23-

§528(a), not on whether an assisted person in a particular case understood the terms of the contract to mean what the debt relief agency who drafted the contract purports the text to mean.

A contract with an assisted person must clearly and conspicuously explain the services that the debt relief agency will provide and the fees or charges for such services. Only then an assisted person can understand how much the services to be provided may cost. The debt relief agency is not required to ascertain a specific amount to be charged when billing by the hour but must be able to offer the assisted person a reasonable estimated amount, after an evaluation of his or her specific needs and goals. Stating in the contract that the services will be charged by an hourly rate explains the methodology that will be used to charge for the services but does not inform the assisted person how much the services may cost. To comply with its statutory responsibilities, a debt relief agency that chooses to charge by the hour must provide a realistic estimate of the cost of the services, by evaluating the services needed or expected by the assisted person and the time likely to be required to provide them.

The Court finds that Almeida failed to comply with the material requirements of §528(a)(1)(A) and §528(a)(1)(B).

Upon a review of the record, the Court is unable to determine when did Almeida, as a debt relief agency, commenced to provide bankruptcy assistance to the debtor, and therefore, the Court has not been provided with relevant facts to determine if the services contract was executed within the five (5) days period, as required by §528(a)(1). The Bankruptcy Code mandates providing clear and conspicuous written notices after the first date of the offering to provide bankruptcy assistance at section 527(a)(2). However, §§527(a)(2) and 528(a) refer to two (2) different moments, one in which the debt relief agency offers to provide bankruptcy assistance and where a debt relief agency must comply with certain written notices within three (3) days; and another when the debt relief agency actually furnishes bankruptcy assistance to the

assisted person, from which the five (5) days term to execute a written contract commences, pursuant to Section §528(a). Not every encounter with an attorney will amount to bankruptcy assistance, and an assisted person has the right to select the attorney that better caters his or her needs. In re Humphries, 453 B.R. 261, 267 (E.D. Mich. 2011). The expectation of BAPCPA through sections 526-528 is a well-informed "assisted person" through the bankruptcy process, able to make knowledgeable decisions when determining to file for bankruptcy and while hiring the services of a debt relief agency.

Furthermore, the court concludes that, by representing to the assisted person that the $3,000.00 are the minimum fees for a Chapter 13 case and that they are pre-approved by the Court, Almeida violates Section 526(a)(2), which proscribes a debt relief agency from making untrue or misleading statements.

"Section 329(b) and Fed. R. Bank. P. 2017 provide independent bases for the court to examine the reasonableness of attorney's fees. 11 U.S.C. 329(b) (2012); FED. R. BANK. P. 2017. If the court determines that the "compensation exceeds the reasonable value" of the attorney's services, it may cancel the retainer agreement or order disgorgement. 11 U.S.C. 329(b) (2012)". In Re Seare, 493 B.R. at 217.

LBR 2016-1(f)(1) is not intended to limit the court's authority and obligation to evaluate the reasonable value of attorneys' services. Even upon a filing where an attorney agrees to charge pursuant to the flat fee, the court is still obliged to evaluate the fees requested in relation to the services provided, on motion by a party in interest or on the court's own initiative. "[T]he court has an independent judicial responsibility to review the fees of professionals, even in the absence of objections." In Re Lugo Parrilla, 530 B.R. at 9. Informing the assisted person that a "standard minimum fee" has been "pre-approved" by the court is misleading. The assisted person relies on the manifestations of a debt relief agency as the most knowledgeable party in the

-25-

contractual relationship. The disclosures and requirements on §527 and §528 and the restrictions of §526 were precisely created to provide the assisted person, even as a layperson, sufficient trustworthy knowledge throughout the process.

The consequence of a contract executed between an assisted person and a debt relief agency that does not comply with the material requirements of §528(a) is its nullity and unenforceability. 11 U.S.C. 526(c)(1). Almeida alleges that the Bankruptcy Code sets "strict requirements to declare the invalidity of a service contract and find a debt relief agency liable to a debtor". Almeida analyzes that §526(c)(1) and §526(c)(2)(A) should be read in conjunction and that, in order to declare a contract void, a court must make a determination of: (1) intention or negligence, (2) actual damages and (3) that the "assisted person does not wish to enforce the contract". Almeida further alleges that the only available remedies contemplated in the bankruptcy code are actual damages and reasonable attorney's fees. The court disagrees with Almeida's contention. Section 526(c)(1) specifically deals with the contract, and whether the terms and conditions of the contract comply or do not comply with the "material" requirements of §§526-528. On the other hand, Section 526(c)(2) deals with the conduct of a debt relief agency, and its compliance with the provisions of §§526-528. If a contract itself fails to comply with the statutory requirements, the contract is void and unenforceable pursuant to §526(c)(1). However, if a conduct of a debt relief agency is in breach of §§526-528, then the remedial scheme of §526(c)(2) applies. As stated by the Collier treatise on bankruptcy, while discussing a similar analysis by a district court's decision, "[i]n separating a contract violation remedy in section 526(c)(1) from an agency conduct violation in section 526(c)(2) (where the remedy will be fee disgorgement, not contract avoidance), the district court's decision represents the superior approach. The district court's analysis upholds a reasonable remedial scheme and ensures that if a contract is going to be voided, it will be for lack of a provision so substantial as to influence its

essential validity and the debtor's ultimate satisfaction." 4 Collier on Bankruptcy ¶526.01[1] (Richard Levin & Henry J. Somme eds., 16th ed.). The court in In Re Humphries explains:

> "The written fee agreement required by section 528(a)(1) must contain a clear explanation of "(A) the services such agency will provide to such assisted person; and (B) the fees or charges for such services, and the terms of payments[.]" Id. §528(a)(1). A written fee agreement may not contain: any waivers of rights afforded the debtor as against debt relief agencies, 11 U.S.C. 526(b); false statements, id. §526(a)(2); or misrepresentations of services to be provided or benefits available under the Bankruptcy Code, id. §526(a)(3). In Re Humphries, 453 B.R. at 263.

This court adds to the Humphries court's summary that the explanations need to be clear and conspicuous. The Almeida contract fails to clearly and conspicuously explain the services that the agency will provide and the fees for such services. Furthermore, the Almeida contract makes a misleading statement when it asserts that a minimum fee of $3,000.00 is pre-approved by the court. The court finds that the failures in the Almeida contract are material, and, consequently, the court finds that the contract signed on August 12, 2015, between Ms. Maria Socorro Rodríguez Pérez and Almeida is void. Therefore, the Court is unable to enforce it, pursuant to 526(c)(1).

### VII. Validity of the Amended Contract

The contract for bankruptcy assistance executed between the Debtor and Almeida was amended on February 2, 2016, five (5) months after the filing of the bankruptcy case. The amended contract includes a notice in the top portion of its first page that states as follows: "This agreement replaces the obligations of the parties in accordance to its terms."

Almeida argues the validity of the amended contract as follows:

> "The **amended contract is valid** and complies with 11 U.S.C. §528(a), because it explains clearly and conspicuously: (a) the services to be provided to the Debtor, and (b) the fees or charges for such services, and the terms of payment. Its validity is not affected because it was signed after the filing of the case, because a valid contract was signed pre-petition and the only purpose of the amendment was to benefit the debtor by speeding the confirmation of her plan and charging her

-27-

the flat fee $3,000.00 for pre- confirmation services. As of the date of the amendment, Counsel's time records showed that if an application would have been filed the amount for the services up to that date exceeded $3,000.00…" (Docket No. 107, p.15).

As previously explained, the original contract executed by Almeida and the debtor is void for failure to comply with the material requirements of §528(a), as it does not explain with particularity the services to be provided by the debt relief agency, nor the cost of the services. The amended contract provides for a flat fee of $3,000.00, replacing the open-ended hourly billing fee agreement of the original contract, and provides two (2) lists of services to be provided to the Debtor, filling the void of the original contract. The contract was amended five (5) months after the filing of the bankruptcy petition to correct the shortcomings of the original contract. The terms of the services contract, including the services and fees, need to be discussed and agreed with the assisted person prior to the filing of the bankruptcy case. Almeida suggests that the Court should disregard the legal requirements of §§526-528, by allowing the Firm to correct the material faults of the original contract with an amended contract, five (5) months after the filing of the petition. A service contract deemed void due to the debt relief agency's failure to comply with the material requirements of §§526-528 cannot be remedied *ipso facto* by an "amended contract" after the filing of the petition.

Furthermore, the Court notes that the amended contract includes two (2) written notices signed by the Debtor as received on February 2, 2016. The written notices of the amended contract are the only information in the record of the case regarding Almeida's efforts to comply with the requirements of §527. Section 527 requires the debt relief agency to provide the written notices not later than three (3) business days after the date on which a debt relief agency first offers to provide any bankruptcy assistance services to an assisted person. More than six (6) months passed between the date in which Almeida provided the initial consultation to the

Debtor, July 15, 2015, and the date on which the written notices were provided to the Debtor on February 2, 2016. Therefore, the Court finds that Almeida failed to provide the written notices to the Debtor within the timeframe required under §527.

### VIII. *Debtor's Statement to Enforce the Contract*

Almeida argues that the Debtor has the right under 11 U.S.C. §526(c)(1) to enforce the contract as amended, including its terms of payment, even if the contract is void. This argument misconstrues the scope of §526(c)(1) and ignores the protections afforded to assisted persons in §526(b). Section 526(b) provides as follows: "Any waiver by an assisted person of any protection or right provided under this section shall not be enforceable against the debtor by any Federal or State court or any other person, but may be enforced against a debt relief agency." By arguing that the Debtor wishes to enforce the contract as amended, including its terms of payment, Almeida is advocating for a waiver to the Debtor's right of not being obligated by a court to pay for the services of the debt relief agency if the contract is void. This type of waiver is unenforceable under §526(b). Moreover, §526(c)(1) has been interpreted "as preventing an attorney who fails to comply with the requirements of 11 U.S.C. §§ 526, 527, or 528 from obtaining a court order compelling the debtor to pay additional attorneys' fees otherwise be due and owing." In re Gutierrez, 356 B.R. 496, 505 (Bankr. N.D. Cal. 2006). Accordingly, the debtor's statement to enforce the contract does not liberate the debt relief agency of the legal consequences of rendering the contract void.

### Conclusion

In view of the foregoing, the Court finds that both the original contract and amended contract for bankruptcy assistance executed between the Debtor and the law firm Almeida & Davila, PSC are void for failure to comply with the material requirements of 11 U.S.C. §§526-

-29-

528. The Court concludes that the law firm has forfeited the right to charge for the services provided in this case, and orders Almeida & Davila, PSC to return to the Debtor all the fees paid prior to the filing of the bankruptcy petition. Almeida & Davila, PSC is hereby ordered to use services contracts for bankruptcy assistance consistent with this order.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of July 2018.

Enrique S. Lamoutte
United States Bankruptcy Judge

-30-